IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| LANCE THORNTON,<br>    Plaintiff<br><br>v.<br><br>STEVEN DELUCA, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, and JOHN DOE 9, JOHN DOE 10, and CITY OF ERIE, PENNSYLVANIA,<br><br>    Defendants | Case No.: 1:23-cv-164 |

## REPLY BRIEF OF PLAINTIFF TO DEFENDANT DELUCA'S OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY

Plaintiff, Lance Thornton, by counsel, Timothy D. McNair, files this Reply to the Brief in Opposition to Plaintiff's Motion for Expedited Discovery.

### I. Counterstatement of the Case

Defendant DeLuca has, in his Brief, made it clear that the government intends to use every available procedure to delay the disposition of this case, which will be prejudicial to the Plaintiff since his early dementia is progressing. The rate of progression and extent to which it will impair his cognitive abilities is unknown. Further delay may prolong this case beyond the point where he would be able to give testimony on his own behalf.

DeLuca recites, at length and verbatim, all of the discovery requests made by Thornton in the Erie County Court of Common Pleas. All of these discovery requests were proper under state law and DeLuca removed the case (prematurely) specifically in order to avoid discovery despite having (inadequately) responded to the requests before removal. In short, the government knows that it seriously violated Mr. Thornton's rights and is squirming at every opportunity to avoid accountability. To the extent that this Court finds that any of the interrogatories or requests for production of documents are not proper in expedited discovery in Federal Court, the Plaintiff will accept whatever reasonable limitations the Court chooses to put on his discovery requests. He is not asking the Court to re-write his discovery requests, but simply to indicate if any are deemed too extreme at this stage of the case.

Under Pennsylvania law, a plaintiff is entitled to initiate an action and perform pre-complaint discovery in order to gather facts necessary to draft a complaint. It should be noted that in counsel's email, she makes it extremely clear that, no matter what, the government intends to file a Motion to Dismiss and, in DeLuca's Brief in Opposition to this Motion, makes it clear that the government intends to appeal the denial of DeLuca's and the Does' request for qualified immunity. This speaks volumes, given that each and every officer is aware, by virtue of their training, that they may not enter a private residence without a warrant or the permission of the owner, and that the permission can be withdrawn. This principle has been upheld in so many cases as to constitute black letter law, but the identity of this case with *Bivens v. Six Unknown **Named Agents** of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), (emphasis added) a case of the search of a residence without a warrant. For counsel to state that "*Bivens* establishes

2

that the names of the Defendants are not required to file a complaint in Federal Court," is belied by the citation of the case stating that the agents were ***named***.

The Defendants' complaint that the discovery requests are overbroad for present purposes is not well taken. There were approximately a dozen special forces soldiers who invaded Plaintiff's residence. It is necessary to determine what role they played in the search to file an adequate complaint listing the available causes of action. DeLuca ignores Plaintiff's likely claim for a violation of the Americans with Disabilities Act for the obvious reason that these soldiers made no effort to comply with it or accommodate Mr. Thornton's stated disability.

Interestingly, Defendant states that he "will provide Plaintiff with the names of the known law enforcement officers who were at the scene on March 12, 2023," representing a substantial change in the government's position.

The relationship between the Federal government, through the U.S. Marshals' office and state agents "employed" in its "Task Forces" required the negotiation and execution of a Memorandum of Understanding. This Memorandum defines the role the state agents will play in operations of the Task Force, and may (and in some instances, does) limit the availability of federal immunity for violations of 42 U.S.C. § 1983. Further, to the extent that any of the agents, or the Task Force, exceeds the authority granted under the Memorandum of Understanding, such departures may give rise personal claims not covered by the sovereign immunity of the United States. The refusal of the City of Erie and Defendant DeLuca in this case, to provide those documents, which are clearly public records, is telling.

In addition to identifying the individuals, Defendant DeLuca should be required to explain the role each individual played in the invasion of Plaintiff's residence and provide the documents evidencing the authority of each individual to ask, to include not only the Memorandum of Understanding between the U.S. Marshal and the state agencies, but all certificates of deputization necessary to establish any claim of immunity.

Plaintiff notes a serious disconnect in Defendant's argument. On the one hand, he argues that the pleading requirements are slight, pointing to *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004), which did not take account of the Supreme Court's May 18, 2009 decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Which heightened the pleading standards in ***every*** case filed in this Court. To the extent that the Defendant is waiving his right to object to Plaintiff's complaint based on *Iqbal* and *Twombly*, and will accept a ruling to that effect now, the need for some of the requested expedited discovery may be negated. However, the government clearly, by failing making even a passing reference to *Iqbal* or *Twombly* in its Brief, is not-so-cleverly trying to "sandbag" this Court by burdening it with a Motion to Dismiss claiming that a higher standard of pleading than it sets forth in its Brief is necessary.

## II. <u>Conclusion</u>

Under the circumstances of this case, Plaintiff's requests for expedited discovery are narrowly tailored, reasonable, and necessary to provide Plaintiff with the information needed to meet the heightened pleading standards of *Iqbal* supra and *Twombly* supra.

Defendant's reference to Rule 8(a)'s pleadings standard is misleading.

The requested discovery will not "erode" the qualified immunity doctrine, and the case presents no circumstances under which qualified immunity would be applicable (beyond the Defendant's right to appeal this Court's decision denying the defense) and his discovery demands are not "onerous."

This Court should, in the interest of justice, fairness, and judicial efficiency, grant Plaintiff's Motion.

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By: */s/Timothy D. McNair*
    Timothy D. McNair, Esquire
    821 State Street
    Erie, PA 16501
    (814) 452-0700
    (814) 454-2371 (fax)
    tmcnair@mcnairlaw.com